Day, J.
On the 13th day of November, 1858, Samuel Tyler brought an action in the court of common pleas, for the county of Cuyahoga, against Charles Winslow, on three judgments rendered against him in the same court, one at the April term, 1839, one at the July term, 1889, and the other at the March term, 1841. The defendant answered, setting up in bar of each ground of action, the statute of limitations of fifteen years. To this, the plaintiff demurred; and the court-sustained the demurrer, and rendered judgment for the plaintiff. On petition in error in the district court, this judgment *365 was reversed ; and this petition, is brought to reverse the decision of that court.
The only question presented is, was the action upon said judgments barred by the statute of limitations of 1831 ?
The solution of this question depends upon the construction to be given to the first section of that act, which is as fol - lows:
“ That all actions hereinafter mentioned, shall he commenced within the several times hereinafter limited, after the cause of such action shall have accrued, and not after.
“First. Actions of ejectment, or any other action'for the recovery of the title, or possession of lands, tenements, or hereditaments, within twenty-one years.
“ Second. Actions for forcible entry and detainer, or forcible detainer only, within two years.
“ Third. Actions upon the case, covenant and debt, founded upon a specialty, or any agreement, contract, or promise in writing, within fifteen years.
“ Fourth. Actions upon the case and debt founded upon any simple contract not in writing, and actions on the case for consequential damages, within six years.
“ Fifth. Actions of trespass for any injury done to the person ; actions of slander for words spoken, or for libel; actions for malicious prosecutions, and for false imprisonment; actions against officers for malfeasance or nonfeasance in office, and actions of debt quitam, within one year.
“ All other actions not herein enumerated, within four years after such right of action shall have accrued; and that when any action for a forfeiture or penalty shall be given and limited by statute, such action shall be commenced within the time so limited.”
In the case of Stockwell v. Coleman (10 Ohio St. Rep. 33), it was held, that a judgment of a court of another state “ is to be regarded as a specialty, under the statute of limitations of this state.”
But, is a judgment of a court of this state a specialty within the meaning of this statute ? There is a wide differ *366 enee between the legal significance and effect of a domestic judgment, and that of a judgment of another state. The latter, although entitled “to full faith and credit,” is here nothing more than a cause of action; but a domestic judgment is much more. It is a lien upon lands; and, upon it, can be exercised all the executory remedies given by the law to procure full satisfaction.
The several actions are limited chiefly with reference to the causes, or grounds on which they are founded. Judgments, or debts of record, are not specified as causes of action to be limited. They can not, therefore, be subjected to the limitation pleaded below, unless they are embraced within the meaning of the term “ specialty ” as used in this section. It is reasonable to presume that the legislature used this word in its ordinary and usual sense, unless the context, or its technical meaning, requires a different interpretation.
Although judgments, in a remote and erudite sense, are specialties, they are not embraced in the usual and ordinary sense of the term. Blackstone treats of contracts as being “ usually divided into debts of record, debts by specialty, and debts by simple contract.” He defines a debt of record as “ a sum of money which appears to be due by the evidence of a court of record;” and, “ debts by specialty,” he says, “ are such whereby a sum of money becomes, or is acknowledged to be, due, by deed or instrument under seal.” Black. Com. 465. The same classification, description, and “ relative order or degree of superiority,” is followed by Chitty and Story. Chitty on Contracts, 2. Story on Contracts, 2. Judgments are not embraced in the definitions of the term given by Tomlinson or Bouvier, but they follow that of Littleton and Blackstone. 8 Tom. Law Die. 513; 2 Bouvier’s Law Die. 540.
So far as the term has been employed, in the legislation of other states, as a subject of limitation, it has been used in the sense of a contract under seal; and this is especially so in this state in all previous statutes of limitations.
The territorial legislature of 1788 (1 Chase Stat. 102), en *367 acted that “ actions of debt upon specialty, and matters of record,” should be commenced within ten years. But this law, being an innovation in providing a limitation to actions upon specialties and matters of record, was disapproved by congress. In 1795 (1 Chase Stat. 151), following the statute of 21 James I, and the statutes of some of the older states, it was enacted, that “ all actions of debt, grounded upon any lending or contract, without specialty,” should be limited to six years. No limitation was provided for actions upon specialties or matters of record, as in the former law. But this law, being regarded unconstitutional, was repealed, and the act of 1804 succeeded it. 1 Chase Stat. 392. This act was anomalous in not limiting .actions on simple contracts, while “ all actions of covenant or debt founded upon any specialty under hand and seal ” were limited to fifteen years. It is clear that the word specialty is here used in the usual sense as before defined.
Thus the law stood, upon this subject, until 1824, to which time, from 1804, no statute assigned any limitation to actions on simple contract. 3 Ohio Rep. 387.
By the act of 1824 (2 Chase Stat. 1402), simple contracts are divided into two classes — contracts “ in writing,” and contracts “not in writing.” All contracts in writing, whether under seal or not, are classed together, and subjected to the same limitation to which specialties,- in the sense of sealed instruments, had long been limited. Contracts not in writing are subjected to the old limitation of six years. The act provides that, “ actions upon the case, covenant and debt, founded upon a specialty or any agreement, contract, or promise in writing,” shall be limited to fifteen years. Bearing in mind that the word, specialty, in the previous statute clearly meant a written instrument under seal, it would seem, from the language here used, that the legislature did not intend to enlarge the meaning of that term, but only to extend to all written instruments the same limitation, theretofore applied to sealed instruments only; for, in the language of the act, “ a specialty or any agreement, contract, or promise in writing,” *368 there is a clear use of the term, as in former acts, in the sense of a written contract under seal.
This seems to have been the construction given to the same language, used, in the act of 1831, in the case of Todd v. Crumb (5 McLean, 172), in which the court say that, “an action, whether it be upon the case, covenant, or debt, is barred in fifteen years, if it be founded upon an obligation in writing, not otherwise.”
The supreme court of Indiana, in construing our statute of 1831, follows the definitions of Blacksto'no, and hold, that the term “ specialty employed in the statute does not embrace a judgment.”
It can hardly be doubted, that if the legislature had intended to introduce a provision so extraordinary as the limitation of actions, founded on the judgment of our own courts, to a period shorter than that of the common law presumption of payment, such intention would have been explicitly declared. But this is a revised statute; and, “it is a well established rule, that in putting a construction upon a revised statute, the mere change in the phraseology does not work a change in the established interpretation of the former statute, unless it evidently appears that such change was intended by the legislature.” Ash v. Ash, 9 Ohio St. Rep. 387.
The application of this rule leaves little doubt that the legislature used the word specialty in this act in the usual sense, and as used in the former acts.
Indeed, it is conceded in the opinion delivered in the case of Stockwell v. Coleman before cited, “that according to the strict meaning of the word specialty, as understood and used by Littleton and Blackstone,” a judgment would not he embraced in the term. The word, then, has. no technical meaning that necessarily embraces judgments. But does the context, as it is used in this section, require a different construction? This seems to have been assumed in the opinion in the case of Stockwell v. Coleman; that, as the legislature, most clearly, did not intend to include judgments in the four years bar of *369 actions not enumerated in the section, they were embraced in the fifteen years limitation as specialties.
However correct this reasoning may be when applied, as in that case, to an action on the judgment of another state, we do not think it conclusive in an action upon a domestic judgment.
A domestic judgment is not embraced in the limitation of four years provided in the last clause of the section, for thé obvious reason, among others, that by a cotemporaneous act, taking effect on the same day with this, it was provided that such judgments should not' become dormant until after five years.
This court, however, are of opinion, that the judgments of the courts of this state are not subject to any of the provisions of the section under consideration. By this section, actions are limited to the specific period of each, “ after the cause of such action shall have accrued ,” or, “ after such right of action shall have accrued.” We think that a fair construction of this language, according to its ordinary import, excludes domestic judgments; and was intended, by the legislature, to apply to claims that accrue by maturity, or arise by the happening of events that give a right of action, as usually understood. It can. hardly be supposed that, without any specific provision to that effect, it was understood that the merging of a cause, or right of action, as ordinarily understood, in a judgment, was the accruing of a cause of action. Surely the object of adjudicating a claim or “ cause of action,” and the rendition of judgment thereon is not to mature, or “ accrue,” a right of action; but to terminate a cause of action in a judgment finally determining the rights of the parties, and to secure the remedies that follow a judgment. Undoubtedly a judgment is a cause or right of action of the highest nature, and that such action accrues when the judgment is rendered; but its objects and purposes are ordinarily so foreign to the mere-maturity or accruing of a right of action, that it would be deemed singular to speak of the rendition of a judgment,, merging an adjudicated claim, as the accruing of a cause of" *370 action; and, especially would this be so, in relation to a domestic judgment, where the only purpose of obtaining it may be the remedies that follow.
We think that the view we take of this statute, as applied to a domestic judgment, harmonizes with the general construction given to it by the -bar of this state for more than thirty years; and now to give it effect beyond the ordinary import of the language and terms employed in it, would make it a snare as well as a statute of repose.
The judgment of the district court must be reversed; and that of the common pleas affirmed.
Brinkerhofe, C. J., and Scott, White, and Welch, JJ., concurred.